PECK and SCOTT, JJ., concurred; SUTLIFF, C.J., and BRINKERHOFF, J., dissented.

---

WILLIAM BOMBERGER ET AL. *v.* WILLIAM TURNER, ADMINISTRATOR OF HENRY CLYNE, DECEASED.

Lands fraudulently transferred by the instrumentality of a judicial sale, descended to the heirs of the alienee, who, ignorant of the fraud, assigned the same in partition to one of their number. Such heir took possession, paid taxes from year to year, and in good faith made valuable and lasting improvements. A judgment creditor filed his petition against the alienor and the heirs of the alienee, to set aside the transfer for fraud, and subject the premises to the payment of the judgment. Held:

1. Such heir, who, innocently and in good faith, had made such expenditures for the benefit of the estate, was entitled to be equitably compensated therefor *in that action* and out of the proceeds of sale to be ordered. And that an answer, alleging such expenditures, and asking, in case the transfer should be adjudged fraudulent, for the ascertainment of the amount equitably due him, and its payment out of the proceeds of the sale, is good on demurrer.

2. It was the right of the heir, thus circumstanced, to have such relief in that action, and a decree which merely saves his rights under the occupying claimant law, and orders the property to be *appraised and sold,* "free from improvements made thereon by the defendants," is erroneous.

3. Such alienor, in a suit by his judgment creditor against him and the *heirs* of his alienee (the personal representative of the alienee not being a party thereto), is a *competent witness,* under sections 310 and 313 of the code, *to prove fraudulent collusion between himself and the deceased alienee.*

4. In order to put plaintiff upon proof of a material averment in his petition, the defendant must, in some form, deny its truth. Hence, where the answer to such averment is merely "these defendants do not admit," etc., the plaintiff can not be required to offer proof in regard to it.

5. In an action by a judgment creditor, under section 458 of the code, to set aside a fraudulent deed, and subject the premises to the payment of his judgment, he should aver that the judgment debtor has not sufficient real or personal property, etc.; but he need not aver that an *execution* has been issued and returned "no property," etc. It is the *fact*, and not mere *evidence* of the fact, which that section requires as the basis of the action.

ERROR to the superior court of Montgomery county.

The defendant in error filed his petition, in said superior court, against the plaintiffs in error and one William M. Seely, setting forth the rendition of a decree in the Montgomery common pleas, in 1849, against said Seely, and in favor of said Clyne, for $1191.05 and costs of suit, and a revival of that decree, in 1856, in the name of said administrator; that Seely has no property subject to levy, but that, during the pendency of said first suit, he was the owner of lot No. 988, in the city of Dayton, and combined with one George W Bomberger, his attorney and friend, to defraud said Clyne, and prevent the collection of his anticipated judgment; that, in furtherance of such combination, the two went to Troy, Miami county, where judgments, wholly without consideration, were confessed by said Seely, before a justice of the peace, in favor of said Bomberger, for $297.75; that executions thereon against the lands of said Seely were awarded by the Miami common pleas, upon which said lot No. 988 was sold to said Bomberger, who purchased the same under an express agreement to take the title and hold it in trust for said Seely; that Bomberger died long after said sale, but without having received any deed for said lot; that, in 1852, a deed was made to the plaintiffs in error, as his heirs at law. The petition asks that said sale and conveyance be adjudged fraudulent and void as against said judgment, and that the lot be sold to satisfy the same.

Seely answers, admitting, substantially, all the allegations of the petition as to the recovery of the judgment, its subsisting obligation, his destitution of property subject to levy, and the fraudulent transfer of lot No. 988 to Bomberger.

The heirs of said Bomberger answer, denying the fraud charged, and aver that the judgments upon which the lot was

sold were obtained in good faith, for services previously ren-dered by said Bomberger, and fully detailed in said answer, and not for any fraudulent purpose whatever; and that the property of said Bomberger, including said lot, had been partitioned among said heirs, and the lot in controversy much improved by those to whom it had been assigned.

An· additional answer was filed by P. P. Lowe and Anne Lowe, to whom said lot was assigned in said partition, stating that said lot, when sold, was vacant and unimproved; that there is due to them a balance, after deducting all rents received, of $559.55, for moneys expended by them in pay-ment of taxes on said lot, and for curbing, grading and gut-tering the same, by · order of the city council, and in the erection of a small house thereon, giving a detailed state-ment of all said receipts and expenditures. They further aver that all said moneys were by them inno*c*ently expended, and ask that, if said conveyance should be set aside, their interest in said lot and improvements, by reason of said ex-penditures, should be ascertained before a sale of said lot, and that the same should be paid out of the proceeds of the sale.

A reply was filed by the administrator of Clyne to the first answer of Bomberger's heirs, denying each and every material allegation therein.

A demurrer was also filed to the second or additional an-swer of P. P. Lowe and Anne Lowe; which demurrer was sustained by the court.

The cause was thereupon submitted to said superior court upon the petition, original answer, reply and testimony pro-duced by the parties; whereupon the court found that said plaintiffs in error held said lot in trust for said Seely, and that said conveyance was fraudulent and void as against the creditors of said Seely, and the lot No. 988 liable to be sold to satisfy the decree of the defendant in error; and there-upon ordered the same to be sold according to law; but pro-vided in said decree that the sale should be "made without prejudice to any rights which the defendants (therein) might have under the occupying claimant law," and ordered "that,

in appraising the same, it (the lot) be appraised free from improvements thereon made by the defendants." To which rulings and judgment the defendants excepted.

A bill of exceptions was taken by the plaintiffs in error, containing all the testimony given upon the trial, from which it also appears that, during the progress of the trial, the defendant in error, among others, offered William M. Seely, one of the defendants below, and a participator in said alleged fraud, as a witness, to whose admissibility as a witness in relation to said alleged fraud the plaintiffs in error objected, which objection was overruled by the court, and said Seely was permitted to testify to said fraudulent collusion between himself and George W. Bomberger, deceased.

This petition in error is prosecuted to reverse the said judgment. The various errors assigned are set forth in the opinion of the court.

*P. P. Lowe*, for plaintiffs in error

*John Howard*, for defendant in error.

Peck, J.—The error first assigned is, that the court below erred in sustaining the demurrer to the additional answer of P. P. Lowe and wife, as to improvements and expenditures made by him upon the premises in controversy.

It appears from the petition and original answer, that P. P. Lowe and Anne, his wife, in right of the said Anne, had been in peaceable possession of said premises (lot No. 988 in the city of Dayton), for several years prior to the commencement of the suit, improving the same and claiming title thereto, under a deed duly executed to them and William Bomberger, as heirs of George W. Bomberger, deceased, by the sheriff of Montgomery county, on a judicial sale of said lot, made in good faith and for value, to their said ancestor as the property of William M. Seely, who, as the *petition avers*, then was, and still is, the *owner* of said premises. The additional answer alleges, that when said lot came into the possession of Lowe and wife it was *vacant and unoccupied*, and that while in their possession P. P. Lowe had *innocently*

expended large sums of money, in said additional answer specified, for taxes from 1846 to 1859, inclusive, and for curbing, guttering and filling up said lot under the orders of the city council, and also in erecting a house thereon. The additional answer asked that, *in case the deed should be set aside,* the amount of Lowe's expenditures, after deducting all rents received, which are specifically stated, should be ascertained by the court before ordering a sale, and the amount thus ascertained paid over to him out of the proceeds of the sale.

The facts stated in the additional answer are not pleaded in *bar* of the action, as the counsel for defendant in error seems to suppose, but as creating a *right in equity* to a portion of the proceeds, if a sale should be ordered, as demanded by petitioner.

The action is a suit in equity, to subject lands, fraudulently aliened, to the payment of a judgment against the grantor, in the hands of the grantee's heirs, who, as admitted by the demurrer, were *ignorant of the fraud,* and made the improvements *innocently,* while in possession of the premises.

It would seem from this statement, that the relief asked should have been granted in the *same action,* in analogy to the relief given in actions for the recovery of real estate, under the " act for the relief of occupying claimants of land." Equity had obtained jurisdiction of the parties and subject matter, and should, therefore, in order to avoid a multiplicity of suits, retain the cause and do *complete justice* between the parties. That this may be done, in such cases, by courts of equity, is well settled in this state. *Henry* v. *Doctor,* 9 Ohio Rep. 49; *Salmond* v. *Price,* 13 Ohio Rep. 369.

It is true, that the fraud of Bomberger, found by the court below, avoids the *title* cast by descent upon his heirs; but they are not charged with actual knowledge of the fraud, and are admitted by the demurrer to have made the improvements innocently, while in possession of the lot; and we are of the opinion that the fraud of the ancestor, of which they were ignorant when the improvements were made, should not deprive them of compensation for their expenditures; especially where the laches of the creditor, as in the present case,

left them for a series of years in possession of the premises, thereby inducing a belief that their title was indisputable.

In our opinion, the demurrer to the additional answer should have been overruled, and the court, having found the transfer fraudulent and void, should have directed an investigation to ascertain the amount of the expenditures for which the defendant, Lowe, was thus equitably entitled to compensation ; and this brings us to notice the decree pronounced by the superior court, to which exception is also taken.

The decree orders a sale of the premises to satisfy the judgment, but " saves the right of defendants under the occupying claimant law," and directs an appraisement of the lot " free from improvements made thereon by said defendants."

This decree is liable to several objections :

1st. Even if it were a case to which the statute was, in terms, applicable, the court, having possession of the cause, should have administered relief in pursuance of its provisions ; but the suit not being of that character, the court should have granted the relief *in analogy to the statute*, and permitted the defendants to retain possession, until such relief was accorded.

2nd. A portion of the improvements, the curbing and guttering done under the order of the city council, are not *upon the premises*, but necessarily enhance the value of the lot. The effect of these improvements could not be disconnected from the lot in its valuation by the appraisers, and would not, perhaps, be a subject for compensation under the statute. So, too, the taxes paid by the defendant, whereby the lot was saved from forfeiture, are not within the letter of the statute in actions other than suits against purchasers at tax sales ; but they are all, we think, clearly within its spirit, and when administering relief in *analogy* to the statute, may very properly be made subjects of equitable compensation.

3d. A still more serious objection to this decree is, that instead of *terminating litigation*, it inaugurates *further controversies*. It authorizes, if it does not invite, subsequent litigation as to the value of the improvements, and has,

therefore, a direct tendency to embarrass or prevent all sales under it. It expressly exempts the improvements from valuation and sale, and affects to confer upon the purchaser a *title to the naked lot*, subject to the *right of the defendant* to establish, in further proceedings, the value of the improvements upon it. The amount of such future recovery is necessarily uncertain, and but few would be willing to hazard the purchase. A sale, under a judicial order, ought always to confer upon the purchaser a title freed from all claims of the litigant parties.

3. It is insisted that the court erred in permitting Seely, one of the defendants, after the decease of George M. Bomberger, the ancestor of plaintiffs in error, to prove a fraudulent combination between himself and said George, to defraud the plaintiff below and prevent his subjection of said lot to the payment of his judgment.

Waiving the question whether the fraudulent grantor, in suits by creditors to set aside the conveyance, is an *adverse party* to his grantee, in the sense of section 313 of the code, it is sufficient for us to say, that the present case does not come within any of the exceptions created by that section. Bomberger's administrator was not, and, indeed, could not properly have been, made a party to the suit below.

Seely, though a party to the suit, is a competent witness, under section 310, and section 313 incapacitates him from testifying, only in those cases, " where the *adverse party* is the *guardian* of an idiot, lunatic or deaf and dumb person, or the *executor* or *administrator* of a deceased person, or the *guardian* of a *child* or *children* of a deceased person, when the facts to be proved transpired before the death of such deceased person," etc. This section sedulously avoids extending its protection to *adult heirs* as such, though its propriety could hardly have escaped consideration in drafting the provisions as to executors, administrators and guardians. The section has been revised, altered and modified several times by the legislature, and it would be going too far for us, on its assumed propriety, to add a disqualification to those already

specified, and thus in effect to repeal *pro tanto*, section 310, of the code.

4. It is insisted that the court also erred in rendering judgment for plaintiff below, without proof that Seely had no property subject to levy, that fact having been put in issue, it is said, by the pleadings.

The petition avers, that " the said Seely has no property whereon to levy," while the answer says merely, " these defendants *do not admit* that said Seely has no property on which to levy." Here certainly is no *denial* of the averment, much less any *affirmation that Seely had such property*, the proper way to controvert such negative averment. Nor is there any reason stated for the absence of such affirmation or denial. There was then no such controverting of the averment, as put the plaintiff upon proof of its truth. Code sec. 127. A mere call for proof *unaccompanied by a denial*, would not have imposed such obligation upon the plaintiff. *Bentley* v. *Dorcas*, 11 Ohio St. Rep. 309.

5. It is also claimed, that the absence of an averment in the petition, of the issuance of an execution upon the judgment and its return of no property subject to levy, is fatal to the plaintiff's action, and that the demurrer to the answer, reaching back to the petition, requires a reversal of the judgment for this cause.

Section 458 of the code, which, in this respect, is but a reprint of section 16 of the act directing the mode of proceeding in chancery (Swan's Stat. of 1841, p. 704), makes the *fact* of no property in the judgment debtor, and not the *return upon an execution*, the basis of an *action* to subject the debtor's equitable interest in real estate, etc. Under the chancery act above referred to, it was well settled, that the issuance of an execution and its return was not necessary, if the fact of no property is averred in the petition. *Gilmore* v. *Miami Exporting Co. et al.* 2 Ohio Rep. 294; *Piatt* v. *St. Clair's Heirs et al.* 6 Ohio Rep. 227. The statute confers the right of action, and, it would seem, if it is made to depend on the want of property in the judgment debtor subject to levy, that the averment of such want of property, is all

that is necessary, and indeed much more satisfactory, than the averment that an execution had been returned indorsed *no property found.* Such a return is, at most, only *evidence* of the fact, and may be true although the debtor in fact had such property. We see no occasion, therefore, to disturb the rule heretofore sanctioned by this court and clearly defensible upon principle.

Lastly, it is claimed that the finding of the superior court, that the transfer of lot No. 988, from Seely to Bomberger, deceased, was fraudulent and void, as against the defendant in error, is contrary to the evidence.

The bill of exceptions purports to set forth all the testimony given at the trial. We have carefully considered the testimony thus set forth, and notwithstanding the apparent conflict between the witnesses, we are by no means prepared to say that the court erred in finding that transfer fraudulent and void, nor even, that we should have found differently upon the same testimony.

We do, however, for the reasons hereinbefore stated, find that there was error in sustaining the demurrer to the additional answer of P. P. Lowe, and also in the rendition of the order or decree shown by the record.

Judgment reversed and cause remanded.

SUTLIFF, C. J., and GHOLSON, BRINKERHOFF and SCOTT, JJ, concurred.